UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BLANCA LUCIANO,

                                                  **Case No.: 1:23-cv-2233**

                        **Plaintiff,**

        -against-

M&T BANK,
RUPP PFALZGRAF LLC f/k/a
RUPP, BAASE, PFALZGRAF, CUNNINGHAM, LLC,
and
KYLE DIDONE

                        **Defendants.**
--------------------------------------------------------------------X

## <u>ORIGINAL COMPLAINT AND JURY DEMAND</u>

Plaintiff BLANCA LUCIANO brings suit against a debt collection law firm, RUPP PFALZGRAF LLC f/k/a RUPP, BAASE, PFALZGRAF, CUNNINGHAM, LLC, as well as its partner, KYLE DIDONE (collectively "Attorney Defendants"), for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and New York Judiciary Law § 487; and against both the Attorney Defendants and their creditor client M&T Bank, for violating General Business Law § 349, and for negligence and gross negligence for, *inter alia*, systematically filing and litigating time-barred collection lawsuits.

### Summary of Claims[1]

M&T Bank, through its debt collection law firm, Rupp Pfalzgraf LLC, sued Ms. Luciano on a time-barred account, falsely representing that it had the ability to sue her for the alleged debt with wanton disregard for her due process rights protected by the statute of limitations.

Ms. Luciano is a single mother of two children, one a six-year old with autism. She lives paycheck to paycheck. When Defendants had her served with the time-barred lawsuit for nearly

---

1 This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

$17,000.00, she was shocked, panicked and overwhelmed. This was more than half the amount she makes for an entire year! Ms. Luciano could not sleep for months, tossing and turning, worrying if Defendants were going to garnish her account. For weeks her stomach was in knots and she could not eat. After initially appearing *pro se* and incurring some expenses in defending the action, Ms. Luciano was fortunate enough to obtain a legal services attorney, Matthew Schedler with the non-profit CAMBA Legal Services, to defend her.

Ms. Luciano filed a Motion to Dismiss based on Defendants seeking to collect an auto loan past the statute of limitations. Rather than concede that their conduct was improper, Defendants doubled down and has opposed the motion vigorously over the course of months. Ms. Luciano's motion has been fully briefed and she is awaiting a ruling.[2]

M&T's time-barred lawsuit against Ms. Luciano was no legal error. M&T specializes in auto financing.  In a typical car sale, a consumer has the option to pay for the car in two ways: 1) the consumer can make a one-time payment for the entire price of the car, or 2) the consumer can finance the car by agreeing to pay a higher price in installments over time. The extra amount the consumer pays is the cost of credit and is expressed as an interest rate. When the consumer choses to finance their purchase under option 2, they initially contract with the dealer, who is listed as the seller in the contract. The dealer then immediately assigns the contract to a finance company or a bank like M&T.  M&T is active in the auto financing space and, when consumers default, regularly sues to collect debts arising from this auto financing.

As part of its business model, M&T systemically sues on these debts when they are time-barred. A recent review of auto financing collection cases filed by Rupp Pfalzgraf on behalf of

---

2 As the FDCPA has a statute of limitations of just one year, out of an abundance of caution Plaintiff filed this action prior to the state court ruling on the motion for summary judgment. Although the collection lawsuit was not served until June 22, 2022, it was filed on March 30, 2022 and Plaintiff wanted to be conservative with the FDCPA statute of limitations date.

M&T from January 1, 2020 through March 13, 2023 revealed that out of 45 cases reviewed, 21 were time-barred on the face of the complaint. Of these 21 cases, 15 were reduced to judgment or had applications for judgment pending with the court. This sampling is only a fraction of the cases filed by M&T seeking to collect on contracts for the sale of goods – the scope of M&T's actual misconduct is even larger. This deceptive practice benefits M&T because it can more easily collect putative debts and even secure judgments through lawsuits when a consumer's due process rights are subverted, forcing consumers to address the particularities of debts that the consumers and other witnesses have little memory of. M&T contumaciously files time-barred lawsuits because it has been, so far, more profitable than obeying the law.

## A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Queens County, New York.

## B.   PARTIES

3.      Plaintiff, Blanca Luciano, is a 41 year old single mother of two residing in the Queens

County, New York.

4.      M&T Bank is a banking corporation incorporated in the State of New York, with a principle place of business of 475 Crosspoint Parkway, Getzville, NY 14068. M&T regularly conducts business in the State of New York and this action arises from such conduct.

5.      Defendant RUPP PFALZGRAF LLC f/k/a RUPP, BAASE, PFALZGRAF, CUNNINGHAM, LLC ("Rupp Pfalzgraf") is a professional corporation organized and existing under the laws of the State of New York, with its principal place of business at 1600 Liberty Building, 424 Main Street, Buffalo, NY 14202.

6.      According to the New York Secretary of State website, on January 3, 2023 RUPP, BAASE, PFALZGRAF, CUNNINGHAM, LLC filed a Certificate of Amendment to become RUPP PFALZGRAF LLC.  Plaintiff wanted to note the date of this change as many of the documents that form the basis of this action used the firm's prior name.

7.      Defendant Kyle DiDone is a partner in the banking and creditor rights department at Rupp Pfalzgraf and regularly signs complaints seeking to collect time-barred car debts for M&T Bank. On information and belief, Mr. DiDone is a resident of the State of New York.

8.      Rupp Pfalzgraf and Mr. DiDone are collectively "Attorney Defendants"

9.      Attorney Defendants regularly collect, or attempt to collect, directly or indirectly, debts owed, or due or asserted to be due another (e.g. the putative creditors in collection lawsuits), and that is their principal purpose. Attorney Defendants collect debts by filing hundreds of collection lawsuits, collecting on hundreds of putative judgments, and sending collection letters, and that is their principle purpose, and it is what it regularly does. Many, if not most of the summons and complaints to collect M&T auto debts filed by Rupp Pfalzgraf go out under the putative

signature of Mr. DiDone. Therefore, Rupp Pfalzgraf and Mr. DiDone are each debt collectors within the meaning of 15 U.S.C. § 1692a(6).

10.     Per review of cases available by the New York State Courts Electronic Filing, Attorney Defendants have represented M&T in the majority of its collection lawsuits every year since at least 2014. Accordingly, Attorney Defendants have a long-established relationship with M&T and either know or should know the practices and procedures of M&T in regards to the putative debts that Attorney Defendants collect on their behalf.

11.     Attorney Defendants were agents of M&T acting within the course and scope of its agency in seeking to collect the putative debt from Ms. Luciano. Therefore, M&T is jointly and severally liable for the acts taken by Attorney Defendants on M&T's behalf. M&T is also directly liable for its own misconduct as the party in the collection lawsuit.

### C.   STATEMENT OF FACTS

**The Vehicle, the Default, and the Lawsuit.**

12.     On August 22, 2015, Ms. Luciano entered into a retail installment contract ("Contract") with Star Hyundai, LLC ("Dealer") for the purchase of a 2015 Honda Santa Fe, ("Vehicle"). **Exhibit A** (Retail Instalment Contract).[3]  Upon information and belief, the contract was created on a preprinted form, and this preprinted form was created by M&T.

13. The Contract contained the following important terms:

a.     Dealer automatically assigned its interest in the Contract to M&T Bank.  *Id.* at p. 1;

---

3 All Exhibits referenced in this Complaint are incorporated by reference in their entirety.

b.  The Contract allows for the sale of the car by a onetime payment of the cash price or to pay over-time with the imposition of a finance charge;

c.  The Contract defined default as follows: "You do not make any payment on or before it is due and the installment remains unpaid for more than 10 days;… *Id.* at p. 2, ¶ 15a;

d.  The payments were due monthly beginning October 6, 2015. *Id.* at p. 1.

14.  When she bought the car, Ms. Luciano was working as a medical assistant at a pedestrian's office. And she faithfully made her car payments.

15.  But when her son was very young, he was diagnosed with autism. As a result, Ms. Luciano had to spend more time at home with her young child as he received home health services, including physical therapy, occupational therapy, and speech therapy.

16.  Unfortunately, Ms. Luciano had to cut back her work hours to spend more time at home with her disabled son. She could no longer afford to make payments on the vehicle. She called M&T Bank to ask what she could do. M&T Bank provided an address for Ms. Luciano to return the car and informed her they would treat this as a voluntary repossession. Ms. Luciano returned the vehicle as instructed.

17.  Ms. Luciano missed the February 6, 2018 payment and, per the terms of the contract, defaulted 10 days later on February 16, 2018. Ms. Luciano did not make any other payments after default.

18.  For years, Ms. Luciano did not hear anything about the putative debt.

19.  On March 30, 2022, M&T, through Attorney Defendants, filed a Verified Complaint against Ms. Luciano over the putative debt. **Exhibit B** (Collection Lawsuit). The Verified

Complaint was signed by Defendant Kyle DiDone, a partner at Rupp Pfalzgraf. The Complaint was verified by Jason Davis, who identifies himself as a Vice President of M&T Bank.

20. The Collection Lawsuit brought claims for breach of the retail instalment contract and for unjust enrichment. For the breach of contract claim M&T Bank claims to be damaged in the amount of $16,922.12 but then, oddly, demands judgment from Ms. Luciano for an inflated amount that double counts interest and late charges by $1,729.34.[4]

21. Regardless, the fundamental point is that Defendants had no right to sue Ms. Luciano for any amount as the debt was time-barred.

### *The Collection Lawsuit was time-barred on its face.*

22. The Collection Lawsuit was time-barred on its face.

23. Under CPLR § 213(2), actions based upon contractual obligation are to be brought within six years, but there is an exception for contracts for the sales of goods under Article 2 of the New York's Uniform Commercial Code ("UCC"). Goods are "all things…which are movable at the time of identification to the contract for sale." NY UCC § 2-105(1). Under the UCC, a four-year statute of limitations applies. NY UCC § 2-725.

24. A retail installment contract is "[a] contract for the sale of goods under which a buyer makes periodic payments." Black's Law Dictionary (11ᵗʰ ed. 2019). As such, the sale of a vehicle in an installment contract is simply the sale of a good with deferred periodic payments

---

4 For breach of contract the complaint sought "damage[s], as of March 22, 2022, in the total amount of $16,922.12, which consists of $15,201.78 principal, $1,082.42 interest, $637.92 late fees, and $0.00 miscellaneous fees, along with all costs, disbursements, and attorney's fees." **Exhibit B** (Collection Lawsuit), ¶ 8. In the WHEREFORE clause Defendants apparently sought to double dip, representing to Ms. Luciano that "[P]laintiff M&T Bank demands judgement as follows: (1) [for breach of contract]… in the total amount of $16,922.12, plus accrued interest, late charges, costs, disbursements and attorneys' fees." In other words, Defendants represented to Ms. Luciano that it had a right to seek a judgment from Ms. Luciano for an amount inflated by $1,729.34, by making a double demand for interest ($1,082.42) and double demand for late charges ($637.92).

and is governed by the UCC's four-year statute of limitations. *Autovest, L.L.C. v. Nathan*, No. 24033/2012, 2015 WL 1360148, at *1 (N.Y. City Civ. Ct. Mar. 23, 2015); *Orix Financial Services, Inc. v. Hubbard*, No. 1050662006, 2006 WL 8086481, at *2 (N.Y. Sup. Ct. Oct. 08, 2006); *See Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407 (1985); *Weinstein v. Gen. Motors Corp.*, 51 A.D.2d 335, 337 (1st Dep't 1976).

25.   NY UCC § 2-725(2) provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."

26.   In an installment sale contract action in New York, breach occurs when defendant misses a payment.  *Nathan*, 2015 WL 1360148 at *1; *Orix Fin. Servs. v. Hoxit*, No. 101550/06, 2006 N.Y. Misc. LEXIS 2367, at *3 (Sup. Ct. Aug. 1, 2006).

27.   According to M&T, the Ms. Luciano breached the contract when she defaulted on the February 2018 payment. **Exhibit G** (August 29, 2022 Whalen Affidavit for M&T Opposition to MTD and in Support of Cross-MSJ, ¶ 5. The Contract requires monthly payments due on the 6th of each month and states that default occurs 10 days after the first missed monthly installment payment. **Exhibit A** (Retail Instalment Contract)*, last page, ¶15a.  Consequently, the first missed payment was due on February 6, 2018, and the default occurred 10 days later, on February 16th 2018.

28.   Because the cause of action accrued on February 16, 2018, the latest date the case could have been filed is February 16, 2022.

29.   Instead, M&T filed this action on March 30, 2022, past the expiration of the statute of limitations.  As such, its claims are time-barred.

30.   Given the long experience of M&T and Attorney Defendants in filing collection lawsuits

on putative auto debts, Defendants knew or should have known that the statute of limitations under U.C.C. § 2-725 applies to all of their lawsuits in New York where they seek to collect on a contract for the sale of goods.

31.     By filing, serving, and continuing to litigate time-barred collection lawsuits, Defendants falsely represent to consumers including Ms. Luciano and to the Court that their lawsuits have merit when, in fact, the claim is barred by the statute of limitations.

32.     Defendants misrepresent that the lawsuits are timely filed to deceive consumers into believing that the suits cannot be challenged on statute of limitations grounds, that any attempt to challenge the lawsuit on statute of limitations grounds would be futile, and that they should not challenge the suit in court but instead pay the amount demanded. Moreover, the purpose of these misrepresentations is to deceive the court into entering judgment on time-barred claims, and awarding costs of court when the judgment creditors are not so-entitled.

33.     In filing, serving, and continuing to litigate the time-barred lawsuit, Defendants represented that Mr. DiDone had performed a meaningful attorney review of Ms. Luciano's account and determined, based on professional attorney judgment, that the lawsuit was timely.

34.     If Attorney Defendants had performed a meaningful attorney review, they would have, at a minimum, checked the governing statute of limitations period. Either Attorney Defendants failed to perform a meaningful attorney review — despite their implied representations to the contrary — or they had performed the meaningful attorney review, realized the debt was time-barred, and then still filed, served, and continued to litigate the case, including the opposition to the Motion to Dismiss based on the statute of limitations.

35.     Attorney Defendants know they were required to perform a meaningful attorney review.

**Defendants inflicted damages on Ms. Luciano, beginning with serving her the time-barred lawsuit**

36.  Ms. Luciano is a single mother of two children, one a six-year old with autism. She works as an assistant at a pediatrician's office, but lives paycheck to paycheck.

37.  On or about June 13, 2022, Ms. Luciano was personally served with a (time-barred) lawsuit for $16,922.12 for the balance of the long returned vehicle. **Exhibit B** (Collection Lawsuit).   Ms. Luciano was shocked and overwhelmed. This was more than half her annual salary!  Her heart was racing, her chest became tight, and she could not breathe. Her son, now six, was running around the house, but Ms. Luciano stood off in the kitchen trying to process what was happening.  She did not want to worry her young son or her older daughter; she did not want them to see the panic that was overwhelming her.

38.  For the first number of nights she all but entirely was unable to sleep. She could not go to bed until very late. Then she would toss and turn, worrying about what could happen next. Were they going to freeze her bank account? How would she pay the rent? The food and utilities? Her pay was direct deposited into her checking account, and she was afraid that would be taken. She was afraid she would be arrested. She would get out of the bed in the middle of the night, walk around, and check that her children were safe.

39.  Ms. Luciano still works as the front desk assistant in a pediatrician's office. She is the gatekeeper. The parents and their children come to her when they first walk in the office. She needs to be very spot-on providing parents the correct information, in processing lab paperwork, and working on prior authorizations. She needs to be on the top of her game and focused all of the time. And she was exhausted. And stressed. She was so stressed that her hair literally started to fall off.

40.  But she needed help, so Ms. Luciano confided in her work supervisor for help.  It was embarrassing and demeaning to her to have to seek help, especially from a supervisor, but she was overwhelmed. Together they scoured the internet to see what to do and where to go.

41.  Ms. Luciano found phone numbers for different legal service providers and left messages for them but did not receive a response at first.

42.  But through the frantic internet research of Ms. Luciano and her work supervisor, Ms. Luciano ultimately learned she had to go to the Queens County Supreme Court, and learned where it was. She googled what to say at court and what not to say at court, and tried to learn what the process was.

43.   Ms. Luciano used a friend's car and drove to the Queens County Supreme Court. She paid meters to park. She had to pay to fill the gas tank for her friend for letting her use the vehicle.

44.  When Ms. Luciano got to the front of the courthouse building she was too scared to even go in.  For a half hour she stood outside in the cold, pacing back and forth.   Her six year old son was there in the cold too. He was running around, a bit out of control; the autism manifests itself in the child as being more kinetic and physically unable to stay still - even more so than typical boys of his age. Finally, she took a breath and walked in.

45.  Ms. Luciano describes her experience going to court that day as follows: She was overwhelmed. She went in with a piece of paper trying to find where to go. She was told she needed to go to a certain window and have her "index number" but did not even know what that meant. She was finally pointed in the direction to see a clerk. The clerk grabbed a form and pointed, "Fill out here, then here, say this over here, get it notarized here, and come back." Ms.

Luciano was confused, and scared, and did not know what to do. She felt small.  And her autistic six year old was running back and forth, and she was told she needed to keep better control of him, while her head was spinning with what to do next. She saw all the lawyers in the suits and ties and briefcases, and she felt small, powerless. She thought, "this is a big company" that is suing her, and "I am just a small fish," how am I going to deal with this, how am I going to navigate this? And when she saw the police when she entered, she thought in the back of her head, "Am I going to get arrested?" Ms. Luciano had never been to court before. She never was in trouble with the law.

46.  She brought the answer form the clerk gave her back to work with her and spent time again with her supervisor to try to figure out how to fill it out and what to do next.  They filled out the *pro se* answer.  Ms. Luciano went back to the Queens Supreme Court to file the answer. She borrowed the car of a friend again, and again had to pay to fill the tank. She paid for parking again at the courthouse.  Her experience the next time she went to the courthouse was about as overwhelming and disconcerting as before, but she filed her *pro se* answer.

47.  On June 22, 2023, Ms. Luciano filed her *pro se* answer and was told there would be a court hearing set. **Exhibit C** (*pro se* answer).

48.  At long last, one – and only one – of the legal services providers she had frantically left messages with returned her call. Ms. Luciano met with attorney Matthew Schedler of CAMBA Legal Services, a non-profit legal services provider, who took her case and noticed an appearance in the collection lawsuit.  Mr. Schedler is one of the counsel in this FDCPA suit.

49.  Certainly having a legal services attorney on her side to handle the collection case was a huge help. But the emotional distress inflicted by the Attorney Defendants and M&T still caused significant damages to Ms. Luciano after she retained a legal services attorney to defend her, and

12

continue to this day.

50.  For weeks after she was served with the time-barred lawsuit, her stomach was in knots, and she could not eat.  When she woke up early in the morning to begin her day, and tried to stomach some crackers, she had to put them down because her stomach was just too tense.

51.  Her sleeping patterns have changed. It got a bit better after she retained Mr. Schedler. It was not every night she could not sleep.  For a while it became every other night she could not sleep. And then it became once a week that she had trouble sleeping because of worrying about what could happen to her. Will the bank get a judgment against her? Will they freeze her bank account into which her wages are direct deposited?

52.  And she needs her sleep. Ms. Luciano has to be up at 5:00 AM every morning to get her son ready. There is a very strict regimen he needs to go through because of his condition.  She also needs to make specific meals for him to eat at school in very specific manner. Ms. Luciano then has to be in her office at work by 8:30 as the front line in her office, requiring her concentration.

53.   She has faith in Mr. Schedler, but she worries you can never tell what the bank might be able to get away with, so she feels like she is still carrying a burden until if and when the state court judge dismisses the collection lawsuit. She still has trouble sleeping sometimes; the collection lawsuit is always still in the back of her mind, even now.

**Ms. Luciano moves to dismiss the time-barred lawsuit, but M&T Bank and Attorney Defendants double-down.**

54.  Mr. Schedler filed a notice of appearance and on July 6, 2022 filed an amended answer providing, in great detail, notice to M&T Bank and the Attorney Defendants why their collection lawsuit was time-barred. **Exhibit D** (Amended Answer).

55. Defendants did not move to voluntarily discontinue their time-barred collection lawsuit.

56. Consequently, on July 27, 2022, Ms. Luciano was forced to file a motion to dismiss and supporting documents to dismiss the collection lawsuit as time-barred on its face. **Exhibit E** (Luciano Motion to Dismiss).

57. On August 30, 2022, Defendants doubled down and filed an Opposition to the Motion to Dismiss and a Cross Motion for Summary Judgment. **Exhibit F** (M&T Bank Opposition to MTD and Cross-MSJ).

58. Shockingly, Defendants acknowledged that "the Defendant default on her February 2018 payment." **Exhibit G** (August 29, 2022 Whalen Affidavit for M&T Opposition to MTD and in Support of Cross-MSJ), ¶ 5

59. Rather than dispute the facts, Defendants instead argued the statute of limitations period does not run from the date of default but from the date the debt is accelerated and that the statute of limitations for New York's Motor Vehicle Retail Installment Act ("MVRISA") applies. **Exhibit F** (M&T Bank Opposition to MTD and Cross-MSJ), Affidavit of Jack A. Bargnesi, pp. 10, 11.

60. Neither of these arguments are supported by law. First, the statute of limitations for New York' MVRISA does not apply because a claim under that statute is not asserted. What is asserted is a claim for breach of contract and unjust enrichment. These claims are governed by the UCC the statute of limitations is four years. *Autovest, L.L.C. v. Nathan*, No. 24033/2012, 2015 WL 1360148, at *1 (N.Y. City Civ. Ct. Mar. 23, 2015; *Orix Fin. Servs. v. Hoxit.,* No. 101550/06, 2006 N.Y. Misc. LEXIS 2367, at *3 (Sup. Ct. Aug. 1, 2006)*;Heller v. US. Suzuki Motor Corp.*, 64 N.Y.2d 407, 408 (1985); *Weinstein v. Gen. Motors Corp.*, 51 A.D.2d 335, 337

(1st Dep't 1976). *Herba v. Chichester*, 301 A.D.2d 822 (App. Div. 3rd Dep't 2003) *Troy Boiler Works, Inc. v. Sterile Techs., Inc.,* 777 N.Y.S.2d 574 (N.Y. Sup. Ct. 2003)

61.   Second, acceleration does not begin the statute of limitations period under the UCC. The statute, and Defendants' own submissions in other cases, reject it.  Unlike common law claims which may begin to run from acceleration, claims under the UCC run from the breach.  This is explicit in the statute which states that "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach…." UCC § 2-275(2).  This section explicitly dispatches with M&T's argument. Acceleration requires the aggrieved party not only to know of the breach but communicate it and declare it, but here the statute does away with that requirement in favor of accrual from when the breaching conduct occurs.  *Id.*

62.   M&T is aware that the statute of limitations period accrues at default.  CPLR § 3215 (j) requires that when a party applies for a default judgment that they submit an affidavit confirming the statute of limitations has not expired.  In every case reviewed by counsel for Plaintiff where M&T has applied for a default judgment seeking to collect on a retail instalment contract for the purchase of a vehicle, it submits the same affirmation. Importantly these affirmations state that the action accrued on the date of default which Attorney Defendants always state is the date of last payment as sworn to in the complaint.  In other words, M&T and Attorney Defendants know the statute of limitations accrues upon default and have repeated submitted affirmations to the court swearing this.

63.   An example of this is *M&T Bank v. Moises Gomez-Granillo*, Index No. 606156/2022**,** Suffolk County Supreme Court.  In *Gomez-Granillo*, the Attorney Defendants filed a summons and verified complaint for M&T Bank on March 31, 2022 seeking to collect on a retail instalment contract for the purchase of a vehicle, stating that to consumer failed to pay "his

November 16, 2016 monthly installment payment" and all subsequent payments. ¶ 6 to **Exhibit H** (*Gomez-Granillo* Summons & Complaint). In his Affirmation of Non-Expiration of Statute of Limitations, Attorney Defendant Kyle DiDone affirms "under penalties of perjury" that the cause of action "accrued in November 16, 2016 [date of default]" **Exhibit I** (DiDone Limitations Affirmation), ¶ 2 (brackets and italicization in original).

64. Attorney Defendants either did not perform a meaningful attorney review to determine whether their purported date of breach was legally cognizable, or they did perform such a review, determined there was no authority supporting it, and nevertheless made the assertion anyways.

65. Upon information and belief, Defendants did not make this argument in good faith, but instead made it with the hope of confusing what was in fact a straightforward issue – the U.C.C. prescribes a 4 year statute of limitations for causes of action on sales of goods, the Collection Lawsuit was a cause of action on a sale of goods, and thus the 4 year statute of limitations applied and the Collection Lawsuit was time-barred.

66. On November 7, 2022, Plaintiff filed her Reply Supporting MTD. **Exhibit J** (Luciano Reply Supporting Her MTD). The Reply points out that Defendants' breach upon notice argument clearly contradicts the statutory text (N.Y. U.C.C. § 2-725(2) and collects the New York cases holding that "breach occurs when the right to demand payment accrues, which is when the defendant misses a payment." *Id.* ¶¶ 14-15 (collecting cases). On December 20, 2022, Defendants filed a Reply. **Exhibit K** (Affirmation Reply Supporting M&T Bank Cross-MSJ).[5]

---

5 Not to be content with filing a suit that was time-barred on its face, in their Reply (Exhibit L ¶¶ 26-30) Defendants made a demand for attorney's fees for an amount that that was prohibited on the face of the Retail Instalment Contract. The Reply made demand for made sought "[a]n award of $3,358.00 in attorney's fees" (Exhibit L ¶ 30) while the face of the Retail Instalment Sales Contract limits the creditor's to "reasonable attorney's fees *up to 15%* of the amount owed." **Exhibit A** (Retail Instalment Contract)*,* last page, ¶ 20. The amount alleged to be due in the

67.   The cross-motions are still pending before the state court.

**DEFENDANTS' HAVE A PRACTICE OF FILING AND LITIGATING TIME-BARRED LAWSUITS ON BEHALF OF M&T.**

**M&T's history of filing time-barred lawsuits.**

68. M&T through the Attorney Defendants repeatedly files time-barred lawsuits.

69.  On March 13, 2023, Plaintiff's counsel searched the New York Supreme Court E-filing database for actions filed by M&T in order to determine the scope of their practices.

70. Plaintiff's counsel limited search to January 1, 2020 through March 13, 2023 and only searched for cases categorized as non-credit card consumer transactions.

71. Hundreds of cases appeared. Plaintiff reviewed the first forty five of those cases involving contracts for the sale of goods.  Every one of those cases was filed by Rupp Pfalzgraf.

72. Of those forty five, twenty one were filed outside the 4 year statute of limitations period.

73. Of those twenty one, fifteen had been reduced to judgment or had an application for judgment pending.

74. Twenty of the twenty one complaints for time-barred cases were signed by Mr. DiDone and all of cases with a default judgment or application for a default judgment contained an affirmation from Mr. DiDone affirming they were timely.

75. These cases represent only a portion of those filed by M&T and Attorney Defendants.

76. All of the complaints for these actions had the same structure and generally contained the same language slightly tailored to the individual action.  For example, they all describe the default with identical language in paragraph 6 of the complaint, stating, for example, "Defendant failed pay his January 22, 2016 monthly installment payment and all subsequent payments."

---

Collection Lawsuit for breach of contract was $16,922.12, which would cap reasonable attorney's fees at just $2,538.32.  In other words, Defendants demanded $819.62 in attorney's fees then allowed by contract.

M&T and Attorney Defendants will change the pronoun and the date of payment as appropriate. In every case, M&T and Attorney Defendants provided a date of last payment and stated that no subsequent payment was made after this date.  This is important because it makes clear on the face of the complaint when the cause of action accrued.

77. The complaints also all attached a copy of the contract. This made it possible to determine that the cases involved the sale of goods under the UCC.

78. In many cases M&T does not attach the complete version of the contract, omitting the 2nd page. In fact, of the 21 cases that were time-barred, 11 were missing the second page. This page contains the default language as well at the FTC Holder in Due Course Notice that makes M&T liable for any claims and defenses a Defendant would have against the seller.

79. This was the case for Ms. Luciano. When Ms. Luciano's attorney asked Attorney Defendants directly for a copy of the second page of the contract, they were told that the Attorney Defendants did not have it. The second page was eventually produced as part of M&T's reply in support of its Summary Judgment Motion.

80. The cases reviewed by Plaintiff's counsel reveal willful conduct and a lack of meaningful review.  The time-barred nature of the actions is clear on face of the complaints. In spite of this, M&T and Attorney Defendants sought judgments and improperly affirmed to the court that the actions were timely. One example of this lack of review is *M&T Bank v. Fredrick Green*, Index No. 2528/2022. M&T sued Mr. Green for breach of contract on the sale of a recreational vehicle. The complaint stated that the last payment was January 22, 2016 and there were no subsequent payments. **Exhibit L** (*M&T Bank v. Fredrick Green*, Index No. 2528/2022 summons and complaint)**.**  The action was filed over 6 year later on March 31, 2022.  Mr. Green defaulted and M&T and Attorney Defendants applied for a default judgment.

81. In support of this application Mr. DiDone signed an affirmation swearing, in pertinent part: "The cause(s) of action asserted herein accrued on January 22, 2016 [date of default] in the state of New York. The statute(s) of limitations for the cause(s) of action asserted herein is 6 (six) years. Based on my reasonable inquiry, I believe the applicable statute(s) of limitations for the cause(s) of action asserted herein has/have not expired." **Exhibit M** (*M&T Bank v. Fredrick Green*, Index No. 2528/2022 statute of limitations affirmation).

82. Not only was the action against Mr. Green time-barred under the 4 year statute of limitations under the UCC, but it was also time-barred under the 6 year statute of limitations stated in the affirmation as January 22, 2016, the date of default, is more than 6 year from the March 31, 2022 date of filing.

83. It is clear on the face of the affirmation that the action is not timely, but Mr. DiDone signed it anyway and M&T was able to get a judgment for $18,155.56.  **Exhibit N** (*M&T Bank v. Fredrick Green*, Index No. 2528/2022 judgment)

84. No attorney who meaningfully reviewed this affirmation would have put their name to it.

85. This failure to review is clear on the face of 21 time-barred actions discovered by Plaintiff's counsel. It is easy to tell these cases involve the sale of goods because the contracts are attached, the default date is stated explicitly in the body of the complaint, and the filing date is stamped at the top. Even a cursory review of the initiating papers for these cases reveals they are time-barred. Despite these cases being out of statute M&T and Attorney Defendants persist, filing affirmations in support of default judgments falsely stating these cases are timely.

### D.   COUNT 1: FAIR DEBT COLLECTION PRACTICES ACT
### (as to Attorney Defendants)

86.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

87.  The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

88.  Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general."  *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

89.  The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was allegedly incurred primarily for family, personal or household purposes. M&T and Rupp Pfalzgraf admit in their verified complaint that the putative debt arose from a "consumer credit transaction."

90.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

91.  For the reasons stated in the "Parties" section of this Complaint, each Attorney Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

92.  The Attorney Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.  By way of example and not limitation, the Attorney Defendants violated the

20

FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using false representation or deceptive means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

93.     The injuries inflicted on Plaintiff by the Attorney Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

94.     Ms. Luciano  suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited economic damages for gas for driving to court, parking fees for going to court, and loss of time.

95.     Ms. Luciano' injuries are analogous to, *inter alia*, the following common law claims: negligence, invasion of privacy, intrusion upon seclusion, malicious civil prosecution, and abuse of process.

96.  The Attorney Defendants had a duty to exercise reasonable care in the collection of debts, including not filing and prosecuting lawsuits that are time-barred.

### E.     COUNT  2:  NEW  YORK  GENERAL  BUSINESS  LAW SECTION 349 *ET SEQ.*

#### (As to all Defendants)

97.  Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted

and re-alleged herein.

98.  New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

99.  An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

100. As enumerated in the Statement of Facts, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large.

101. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

102. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

103.   The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

104.   Ms. Luciano suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited economic damages for gas for driving to court, parking fees for going to court, and loss of time.

105.    Ms. Luciano's injuries are analogous to, *inter alia*, the following common law claims: negligence, invasion of privacy, intrusion upon seclusion, malicious civil prosecution, and abuse of process.

106. Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

### F.    COUNT 3: NY JUDICIARY LAW § 487

### (As to Attorney Defendants)

107.  New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

108. As enumerated in the Statement of Facts, Attorney Defendants violated Judiciary Law § 487, and these violations were part of a larger fraudulent scheme greater in scope than the issues determined in the Collection Lawsuit against Ms. Luciano.

109. Judiciary Law § 487 is a traditional cause of action in American courts - N.Y. Judiciary Law § 487 is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." *Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 14 (2009).

110. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for violations of N.Y. Judiciary Law § 487 by Attorney Defendants and Plaintiff so seeks.

### G. COUNTS FOUR AND FIVE: NEGLIGENCE AND GROSS NEGLIGENCE
### (As to All Defendants)

111.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

112.  Defendants owed Plaintiff a reasonable duty of care to not engage in deceptive acts and unlawful practices in the conduct of their business.

113.  As a direct and proximate result of Defendant's breach of these duties, Plaintiff suffered compensable harm, including actual damages, economic damages, and emotional distress.

114.  Defendant M&T, as the creditor, and the Attorney Defendants, as debt collectors, owed Plaintiff a duty of reasonable care in their debt collection efforts.

115.  By way of example and not limitation, Defendant M&T Bank's negligence included forwarding accounts to the Attorney Defendants for litigation when the debts were time-barred, having time-barred lawsuits filed in its name, executing verifications and affidavits in support of the collection of time-barred debts, and selecting and retaining attorneys who file time-barred debts.

116.  By way of example and not limitation, the Attorney Defendants' negligence includes filing time lawsuits that are time-barred on their face, filing affidavits and affirmations that demonstrate on their face that the collection lawsuit is time-barred,  failing to perform a meaningful attorney review to determine if the claims in the collection lawsuit are time-barred, and opposing dismissal of the collection lawsuits when notice that their lawsuit is time-barred in its face.

117.  Defendants' failure to exercise even slight care or diligence amounts to, at minimum, negligence, and in the alternative, amounts to gross negligence.

118.     Moreover, had Defendants exercised even slight diligence they would have known their conduct was unlawful in that they were filing and prosecuting time-barred collection lawsuits, even when placed on actual notice of the same.

119.     As to Plaintiff's claim of gross negligence, made in the alternative to Plaintiff's claims for negligence, Defendants' actions evince a reckless disregard for the rights of Plaintiff and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general. Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Plaintiff is entitled to a punitive damage award.

### H.     JURY DEMAND.

120. Plaintiff demands a trial by jury.

### I.     PRAYER

WHEREFORE, Plaintiff requests the following relief:

a.       A declaration that all Defendants have committed the violations of law alleged in this action;

b.       Statutory damages under 15 U.S.C. § 1692k and GBL 349;

c.       Reasonable attorney's fees and costs;

d.       Actual damages;

e.       Treble damages;

f.       Exemplary and punitive damages;

g.       An order, pursuant to GBL 349(h), enjoining and directing Defendants to cease

filing time-barred lawsuits;

h.       Prejudgment and post judgment interest as allowed by law;

i.       All other relief, in law and in equity, both special and general, to which Plaintiff

may be justly entitled.


Dated:  Brooklyn, New York
         March 22, 2023

                              Respectfully submitted,

                                   /s/ *Matthew Schedler*
                              Matthew Schedler, Of Counsel to
                              Elizabeth Miller, General Counsel
                              CAMBA Legal Services, Inc.
                              885 Flatbush Ave., 2nd Floor
                              Brooklyn, NY 11226
                              Phone: (718) 940-6311 ext. 79284
                              Fax: (718) 462-5537
                              Email: MatthewSc@camba.org


                                   */s/ Ahmad Keshavarz*

                              Ahmad Keshavarz
                              Emma Caterine
                              The Law Office of Ahmad Keshavarz
                              16 Court St., 26th Floor
                              Brooklyn, NY 11241-1026
                              Phone: (718) 522-7900
                              Fax:    (877) 496-7809
                              Email: ahmad@NewYorkConsumerAttorney.com